# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

EARL K. CHERRY and SUSAN FANNING,
individually and on behalf of all others similarly
situated,

      Plaintiffs,

v.

ELECTROLUX HOME PRODUCTS, INC.,

      Defendant.

Civil Action No.:_____

Jury Trial Demanded

## CLASS ACTION COMPLAINT

Plaintiffs Earl K. Cherry ("Cherry") and Susan Fanning ("Fanning"), individually and on behalf of all others similarly situated, bring this action against Defendant Electrolux Home Products, Inc. ("Electrolux"). The following allegations are based upon personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## NATURE OF THE ACTION

1.      Defendant Electrolux designs, manufactures, and markets a wide range of home appliances. It touts itself as a "global leader" in home appliances and appliances for professional use, selling more than 40 million products to customers in 150 countries every year. In 2010, it was the world's second-largest home appliance maker by market share.

2.      Electrolux's core message is "thinking of you," a pledge to Electrolux's customers that it places an emphasis on its customers' interests when Electrolux is testing, designing, manufacturing and selling its products for use in consumers' homes.

3.      Despite this claimed focus on consumers, Electrolux designed, manufactured, and marketed dishwashers ("the Dishwashers") that contain a serious and dangerous defect, putting many of its customers in harm's way.

4.      This defect allows the heating element of the dishwasher come into contact with or into dangerous proximity to the polymer tub floor creating burns and/or holes in the bottom of the tub floor of the Dishwashers putting consumers and the public at a serious safety risk as well as causing flooding, fires and property damage ("the Defect").

5.      At all times relevant, Electrolux knew of should have known of the Defect and nevertheless sold the Dishwashers to consumers for home use, failed to warn consumers of the serious safety risk the Defect posed to consumers and failed to remove these dangerous and defective Dishwashers from consumers' homes.

6.      As a direct and proximate result of Electrolux's concealment of the Defect, its failure to warn its customers of the Defect and the safety risks posed by the Dishwashers, and its failure to remove the defective Dishwashers from consumers' homes or otherwise remedy the Defect, Plaintiffs Cherry and Fanning purchased one of Electrolux's defective and unsafe Dishwashers.

7.      On or about January 25, 2012, and as a result of the Defect, the heating element of Cherry and Fanning's Dishwasher came in contact with the polymer tub floor, burning a hole in the floor of the tub causing damage to the Dishwasher and flooding and causing a serious risk to personal safety.

8.      Class members' Dishwashers contain the same Defect that poses the same substantial safety risk to consumers and the public and cannot be used for their same intended purpose of safely washing dishes.

9.      Furthermore, when the Plaintiffs complained including by one or more telephone discussions with Electrolux/Frigidaire representatives, they only met with resistance and obstruction on their attempt to make a claim under the product warranty.  Upon information and

2

belief, other members of the putative class have also encountered similar resistance to Defendant honoring its warranty obligations.

## PARTIES

10. Plaintiff Earl K. Cherry is a citizen of Virginia and resides in Warrenton, Virginia.

11. Plaintiff Susan Fanning is a citizen of Oklahoma and resides in Broken Arrow, a suburb of Tulsa, Oklahoma.

12. Defendant Electrolux is upon information and belief a Delaware corporation with its principal place of business at and which can be served with process at its principal place of business located at 10200 David Taylor Dr., Charlotte, NC 28262; and may also be served with process at Electrolux Home Products, Inc., c/o CT Corporation System, Registered Agent, 150 Fayetteville St., Box 1011, Raleigh, NC 27601; and/or at its place of business located at 3100 Hutchison McDonald Road, Charlotte, NC 28269.

13. Upon information and belief, at all times relevant, Electrolux was engaged in the business of designing, manufacturing, and distributing the Dishwashers throughout the United States, including in this jurisdiction.

14. Upon information and belief, the negligent and deceptive acts taken by Electrolux in designing, testing, manufacturing, marketing and selling the Dishwashers took place and/or were directed from North Carolina.

15. Defendant Electrolux engages in a continuous course of business in North Carolina, is headquartered in North Carolina and has its principal place of business in North Carolina.

16. North Carolina has a significant relationship to the allegations pled herein.

3

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) as the amount in controversy exceeds $5,000,0000, exclusive of interest and costs, and at least one member of the Class is a citizen of a State different from Electrolux.

18.     This Court also has jurisdiction under 28 U.S.C. § 1332(a) as Plaintiffs and Defendant Electrolux are citizens of different States and the amount in controversy exceeds $75,000.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as Electrolux's principal place of business is located in this District and Electrolux designs, manufactures and sells the products at issue in this District and directs its sales to consumers throughout the United States from this District, and Plaintiffs' claims arise from tortious conduct occurring in this District.

## FACTUAL ALLEGATIONS

20.     Upon information and belief, Electrolux is engaged in the business of designing, manufacturing, warranting, marketing, advertising and selling Dishwashers labeled under a variety of brand names, including Electrolux, Frigidaire and Kenmore.

21.     On or about May 8, 2011, Plaintiffs purchased a Frigidaire dishwasher, Model No. FDB520RHS2A, Serial No. TH10694255, designed, manufactured and sold into the stream of commerce by Electrolux, from its principal place of business in North Carolina and sold to Plaintiffs in Tulsa, Oklahoma.  Like all class members, Plaintiffs purchased their Dishwasher believing that it was properly designed and manufactured and was safe to use in a residential setting.

4

22.     Plaintiffs' Dishwasher was installed at a residential rental property in Tulsa, Oklahoma, where it was used for its intended purpose of safely washing dishes in a manner reasonably foreseeable by Electrolux.

23.     On or around January 25, 2012, the Defect caused the heating element of Plaintiffs' Dishwasher to burn a hole in the polymer tub floor and flood the kitchen and the living room of the rental property.

24.     Examination of the interior of the Dishwasher showed that the heating element was deformed and distorted, with the distance between the bottom of the heating element and the polymer tub floor surface varying at various locations on the element, and a hole burned through the tub's bottom directly below the heating element, on the bottom-left rear side of the dishwasher, as reflected by the following photograph:



5

25.     Electrolux's Use and Care Guidelines distributed with the Dishwashers upon sale claim that "Electrolux will pay all costs for repairing or replacing any parts of this appliance that provide to be defective in materials or workmanship when such appliance is installed, used and maintained in accordance with the provided instructions."

26.     Although Plaintiffs' Dishwasher was still under warranty, Plaintiffs were unable to obtain a timely and proper remedy under the purported Electrolux express warranty for the Dishwasher.

27.     Plaintiffs have themselves borne the cost of replacing the Dishwasher and repairing the rental property.

28.     Like Plaintiffs, the putative class members also purchased Dishwashers designed, manufactured, and sold into the stream of commerce by Electrolux and used the Dishwashers for their intended purpose of safely washing dishes in a manner reasonably foreseeable by Electrolux.

29.     By the time Plaintiffs purchased their Dishwasher, and at the time Plaintiffs' Dishwasher was burned and caused flooding, Electrolux knew or should have known of the Defect and the serious safety risk its Dishwashers posed to the public, but opted to remain silent and conceal the Defect and its knowledge of the Defect from consumers and the public who had either purchased the Dishwashers or were considering purchasing the Dishwashers.

30.     Like Plaintiffs, class members' Dishwashers had the same dangerous Defect that poses a substantial safety risk during normal use.

31.     Electrolux knew or should have known, of the Defect and hid from the public the serious safety risk its Dishwashers posed, all the while selling its Dishwashers into the home of consumers.

## The Defect

32.     The Dishwashers Plaintiffs and class members purchased have a common Defect in their design and manufacture that will cause the dishwashers to function improperly during the expected useful life of the product, representing an unreasonable risk of burning, flooding, fire, property damage, personal injury and death.

33.     Specifically, Electrolux designed and manufactured the Dishwashers purchased by Plaintiffs and Class members with heating elements that can warp or sag, coming in close proximity to or contact with and melting the plastic tub of the dishwashers. The two spring clips that hold the heating element in place are insufficient to prevent the Dishwashers' heating elements from coming into close contact with the polymer tub, which melts when exposed to high levels of radiant heat.

34.     Upon information and belief, although the plastic tubs used in the dishwashers melt at around 350 ˚F, the heating element can reach temperatures of 800-900 ˚F and therefore, burns a hole in the plastic tub upon contact, thereby causing burning, flooding and fires.

35.     Publically available consumer complaints detail numerous occasions where Electrolux's Dishwashers have failed in this manner, resulting in burning, flooding and fires.

36.     The Defect manifests itself upon sale of the Dishwashers and during the useful life of the Dishwashers, within and without the warranty periods, is substantially likely to prevent the Dishwashers from being used as intended during their expected useful life, and poses significant risks to individuals' lives and property.

37.     The Defect necessitated and will continue to necessitate replacement of and costly repairs to the Dishwashers.

38. Because of the Defect, Plaintiffs and class members failed to receive the benefit of their bargain when they purchased Dishwashers to use for safely washing dishes in the home.

<u>**Electrolux's Negligent and Intentional Conduct**</u>

39. Electrolux failed to adequately design, manufacture and test the Electrolux Dishwashers to ensure they were free from defects at the time of sale despite a duty to do so.

40. The Defects pose a serious and immediate safety risk to consumers and the public and have caused or will cause Plaintiffs' and class members' Dishwashers to fail during their expected useful lives.

41. The Dishwashers belonging to Plaintiffs and class members should have been usable for their intended purpose during their expected useful lives.

42. The life expectancy for a dishwasher is ten years according to the U.S. Department of Housing & Urban Development and the National Association of Home Builders ("NAHB") Economics Department (based on a survey of manufacturers, trade associations, and product researchers).

43. The Defect existed at the time they were sold to Plaintiffs and class members and rendered them unfit for the ordinary and intended propose for which they were marketed and sold.

44. Had the Dishwashers been free from defects, Plaintiffs and class members would not have suffered the damages complained of herein.

45. Moreover, Electrolux had a duty to protect consumers by, at the very least, warning them that the Dishwashers had a serious Defect that posed a substantial risk to personal safety.

46. Nonetheless, even though Electrolux knew, or should have known, of the Defect in its Dishwashers and of the substantial safety risk posed by its Dishwashers, Electrolux opted to conceal the Defect, continue selling products with this Defect and failed to remove this dangerous

8

product from the marketplace so that it could realize the substantial financial benefits of selling the Dishwashers to the public.

47. Electrolux knew, or should have known, that reasonable consumers like Plaintiffs and class members were unaware of the Defect and could not discover the Defect until their Dishwashers were burned, their homes flooded or fire occurred.

48. Electrolux knew, or should have known, that reasonable consumers like Plaintiffs and class members expected the Dishwashers to safely wash dishes without putting consumers' lives and property at risk and expected the Dishwashers were safe to use in the home.

49. Electrolux knew, or should have known, that reasonable consumers expected Electrolux to disclose any defects that would prevent the Dishwashers from performing their function before the end of their useful lives or that would seriously threaten the class members' safety, and that such decision would impact any reasonable customer's decision as to whether to purchase the Dishwashers.

50. To this day, as result of Electrolux's conduct, many members of the putative classes defined herein remain unaware of the Defect in the Dishwashers and the serious safety risk as well as the risk of failure, flooding, loss and fire due to the Defect.

51. Had Plaintiffs and class members been made aware of the serious safety problem with the Dishwashers, they would not have purchased their Dishwashers.

52. Electrolux's conduct has harmed Plaintiffs and class members and has left consumers throughout the United States with a serious safety risk in their homes.

**Electrolux's Actual or Constructive Knowledge of the Defects.**

53. Electrolux either knew, or should have known, prior to selling the Dishwashers to the public, that the Dishwashers had a Defect that would cause the Dishwashers to function

9

improperly during their expected useful life, represented an unreasonable risk of burning, flooding, fire, property damage, personal injury and death, and posed a serious and immediate safety risk to consumers and the public.

54. Moreover, upon information and belief, Electrolux became aware through various claims and reports about its defective Dishwashers and was aware that the Dishwashers had a Defect that posed a serious safety risk to Plaintiffs and class members and an unreasonable risk of flooding, fire, and property damage.

55. Electrolux had a duty to consumers and the public to disclose the defective nature of its Dishwashers, and not to conceal and suppress the defective nature of its Dishwashers from Plaintiffs and putative class members.

56. Although it assures customers on its website that "[h]igh standards of quality at Electrolux Major Appliances mean we are constantly working to improve our products," and "[w]e reserve the right to change specifications or discontinue models without notice," Electrolux has continued to sell the defective dishwashers, has concealed the Defect and failed to notify consumers including Plaintiffs and class members of the existence of the Defect, has never issued a recall of the Dishwashers despite the Defect and the serious safety risk it poses, and has never offered either to replace the defective components with defect-free components or to replace the defective Dishwashers.

57. Instead, Electrolux has, upon information and belief, continued to falsely represent to purchasers and the public that the Dishwashers are in fact free from defects and will perform their intended functions for their expected useful lives.

58. To this day, Electrolux continues in this pattern of concealment and misrepresentation and many members of the putative class are still unaware of the Defect and the

safety risk it poses as well as the risk of burning, failure, loss, flooding, and fire due to the Defect.

59.     Instead of warning consumers of the dangers of its Dishwashers, Electrolux offers a Use and Care Video that instructs customers to feel comfortable using their dishwashers even when they are not at home. *See* http://www.electroluxappliances.com/kitchen-appliances/dishwashers ("By the way, you can always feel comfortable using delay start, even if you are away from the home, because the Electrolux leak-detection system detects leaks immediately, stops, and drains the dishwasher.").  The video assures customers that the Universal Leak Detection System "detects any water leak, immediately stops and drains the appliance, and sounds an alarm."

60.     Electrolux tells its customers that leaks can be caused by improper installation or the type of detergent or rinse aide used.  Nowhere does it mention, however, that Electrolux Dishwashers contain a design Defect that allow the heating element to come in contact with and burn a hole through the plastic tub causing burning, fires, and permitting water to flow from the dishwasher and flood consumers' homes.

61.     As a result, reasonable consumers, including Plaintiffs and class members, purchased and continue to purchase the Dishwashers for residential use and continue to use them in their homes when it is unsafe to do so.

62.     Electrolux has wrongfully placed on Plaintiffs and class members the burden, expense and difficulties involved in repairing and replacing the Dishwashers and the damage the Defect has caused.

63.     Plaintiffs bring this action both individually and as a class action pursuant to Fed.

R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) against Electrolux on their own behalf and on behalf of

North Carolina and National Classes (collectively the "Class") as defined below.

The North Carolina Property Damage Class consists of:

During the fullest period allowed by law, all persons in the United States who
purchased or otherwise acquired in the State of North Carolina an Electrolux
designed and/or manufactured dishwasher primarily for personal, family, or
household purposes having the Defect and who have incurred property damage as
a result of the Defect.

The North Carolina Replacement Class consists of:

During the fullest period allowed by law, all persons in the United States who
purchased or otherwise acquired in the State of North Carolina an Electrolux
designed and/or manufactured dishwasher primarily for personal, family, or
household purposes having the Defect.

The National Property Damage Class consists of:

During the fullest period allowed by law, all persons in the United States that
purchased or otherwise acquired an Electrolux designed and/or manufactured
dishwasher primarily for personal, family, or household purposes having the
Defect and who have incurred property damage as a result of the Defect.

The National Replacement Class consists of:

During the fullest period allowed by law, all persons in the United States that
purchased or otherwise acquired an Electrolux designed and/or manufactured
dishwasher primarily for personal, family, or household purposes having the
Defect.

64.     The Class is limited to the time period beginning on the date established by the

Court's determination of any applicable statute of limitations or repose, after consideration of

any tolling and accrual issues, and ending on the date of entry of judgment.

65.     Excluded from the Class are (a) any Judge or Magistrate presiding over this action

and members of their families; (b) Electrolux and any entity in which Electrolux has a

controlling interest or which has a controlling interest in Electrolux; (b) the officer, directors or employees of Electrolux; and (d) Electrolux's legal representatives, assigns and successors; and (e) all persons who properly execute and file a timely request for exclusion from the Class or from any Court-approved Subclass.

66.     Plaintiffs meet the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

67.     <u>Numerosity:</u> While the exact number of members cannot be determined yet, the Class consists at a minimum of thousands of people dispersed throughout North Carolina and the United States.  The exact number of Class members can readily be determined by review of information maintained by Electrolux.   The members of the Class are therefore so numerous that joinder of all members is impracticable.

68.     <u>Commonality:</u>  Common questions of law and fact exist as to all members of the Class.  Among the questions of law and fact common to the Class are:

a.  Whether the Dishwashers designed, manufactured and sold by Electrolux pose an unreasonable safety risk to consumers;

b.  Whether Electrolux knew, or should have known, that the Dishwashers it sold into the stream of commerce posed an unreasonable safety risk to consumers;

c.  Whether Electrolux concealed the safety risk its Dishwashers posed to consumers;

d.  Whether the safety risk the Dishwashers pose to consumers is a material fact reasonable purchasers would have considered in deciding whether to purchase a dishwasher;

e.  Whether the Dishwashers designed and manufactured by Electrolux possess a material Defect;

f.  Whether the Defect of the Electrolux Dishwashers represents an unreasonable risk of burning, flooding and fire;

g.  Whether Electrolux knew, or should have known, that the Dishwashers possessed the Defect when it placed the Dishwashers into the stream of commerce;

Case 3:12-cv-00770-FDW-DSC   Document 1   Filed 11/15/12   Page 13 of 32

h.  Whether Electrolux concealed the Defect from consumers;

i.  Whether the existence of a the Defect is a material fact reasonable purchasers would have considered in deciding whether to purchase a dishwasher for in-home use;

j.  Whether the Electrolux Dishwashers designed and manufactured by Electrolux were and are of merchantable quality;

k.  Whether the Electrolux Dishwashers designed and manufactured by Electrolux are likely to pose a serious safety risk to consumers before the end of the Dishwashers' reasonable expected lives;

l.  Whether the Dishwashers are likely to burn, cause flooding, start on fire or fail before the end of their reasonable expected life;

m.  Whether the existence of the Electrolux Dishwashers' defects is a material fact reasonable purchasers would have considered in deciding whether to purchase a dishwasher;

n.  Whether the Electrolux Dishwashers' design defects resulted from Electrolux's negligence;

o.  Whether Electrolux breached express warranties relating to the Electrolux Dishwashers by failing to recall, replace, repair and/or correct defects in the Dishwashers;

p.  Whether Electrolux breached implied warranties of merchantability and/or fitness for a particular purpose relating to the Dishwashers;

q.  Whether Electrolux misrepresented the characteristics, qualities and capabilities of the Electrolux Dishwashers;

r.  Whether Electrolux either knew or should have known of the defects prior to distributing the subject Dishwashers to Plaintiffs and Class members;

s.  Whether Electrolux omitted, concealed from and/or failed to disclose in its communications and disclosures to Plaintiffs and Class members material information regarding the Dishwashers' defects;

t.  Whether Electrolux failed to warn consumers regarding the defective Dishwashers;

u.  Whether Electrolux made fraudulent, false, deceptive, misleading and/or otherwise unfair and deceptive statements in connection with the sale of Dishwashers in its product literature and on its website including those relating to standards, use and reliability and otherwise engaged in unfair and deceptive trade practices pertaining to the Dishwashers;

14

v. Whether Electrolux was unjustly enriched by selling the Dishwashers and should be ordered to disgorge all or part of the profits it received from the sale of the defective Dishwashers;

w. Whether Plaintiffs and Class members are entitled to damages, including compensatory, treble and/or statutory damages, and the amount of such damages;

x. Whether Plaintiffs and Class members are entitled to replacement of their defective Dishwashers;

y. Whether Plaintiffs and Class members are entitled to equitable relief, including an injunction and requiring that Electrolux engage in a corrective notice campaign and/or a recall; and

z. Whether Plaintiffs and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and costs and expenses.

69. <u>Typicality:</u> Plaintiffs have substantially the same interest in this matter as all other members of the Class, and Plaintiffs' claims arise out of the same set of facts and conduct as all other members of the Class. Plaintiffs and all class members own or owned a dishwasher designed and/or manufactured by Electrolux with a uniform Defect that makes them immediately dangerous upon purchase and that cause the Dishwashers to fail within their expected useful lives and burn, catch on fire and flood consumers' homes. All of the claims of Plaintiffs and class members arise out of Electrolux's placement into the marketplace of a product it knew was defective and caused a safety risk to consumers and from Electrolux's failure to disclose that known safety risk and Defect. Also common to Plaintiffs' and class members' claims is Electrolux's conduct in designing, manufacturing, marketing, advertising, warranting and/or selling the defective Dishwashers, Electrolux's conduct in concealing the Defect in the Dishwashers, and Plaintiffs' and class members' purchase of the Dishwashers.

70. <u>Adequacy of Representation:</u> Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in products liability, deceptive trade practices, and class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately

15

protect the interests of the members of the Class. Plaintiffs' claims are coincident with, and not antagonistic to, those of the other Class members they seek to represent. Plaintiffs have no disabling conflicts with the members of the Class and will fairly and adequately represent the interests of the Class members.

71. The elements of Rule 23(b)(2) are met. Electrolux will continue to commit the violations alleged, and the members of the Class and the general public will continue to remain at an unreasonable and serious safety and property damage risk as a result the Defect. Electrolux has acted and refused to act on grounds that apply generally to the class members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

72. The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class members have claims against Electrolux, the likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is furthermore not efficient, timely or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated plaintiffs. Plaintiffs' counsel, highly experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

73. To the extent a National Class is sought on Plaintiff's claims, Plaintiffs' claims are materially the same under the law of all states in the United States, and/or North Carolina law

may be applied throughout the class because Defendant is headquartered in this state. In the event that North Carolina law does not apply on a nationwide basis to any of Plaintiffs' claims, Plaintiffs will seek to apply the laws of the various States and the District of Columbia as will be addressed in Plaintiffs' brief in support of class certification.

## Tolling and Estoppel of Statutes of Limitation

74.     The claims alleged herein accrued upon discovery of the defective nature of the Dishwashers. Because the Defect alleged herein is hidden and Electrolux took steps to either conceal or fail to disclose the true, character, nature and quality of the Dishwashers, among other reasons Plaintiffs and class members did not discover and could not have discovered the Defect alleged herein through reasonable and diligent investigation.

75.     Any applicable statutes of limitations have been tolled by Electrolux's knowledge and actual misrepresentations and/or concealment and denial of the facts as alleged herein, which concealment is ongoing. Plaintiffs and Class members could not have reasonably discovered the true defective nature of the Electrolux Dishwashers. As a result of Electrolux's active concealment of the defects and/or failure to inform Plaintiffs and Class members of the defects, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

76.     Alternatively, the facts alleged above give rise to estoppel. Electrolux has actively concealed the defective nature of the Electrolux Dishwashers. Electrolux was and is under a continuous duty to disclose to Plaintiffs the true character, quality and nature of the Dishwashers, particularly that they posed a serious risk to public safety and of burning, flooding and fire. At all relevant times, and continuing to this day, Electrolux knowingly, affirmatively and actively misrepresented and concealed the true character, quality and nature of the Electrolux Dishwashers. Given Electrolux's failure to disclose this non-public information about the

17

defective nature of the Electrolux Dishwashers—information over which it had exclusive control—and because Plaintiffs and Class members could not reasonably have known that the Dishwashers were thereby defective, Plaintiffs reasonably relied on Electrolux's knowing affirmative and/or ongoing concealment. Based on the foregoing, Electrolux is estopped from prevailing on any statute of limitations defense in this action.

77. Additionally, Electrolux is estopped from raising any defense of laches due to its own unclean hands as alleged herein.

## CLAIMS FOR RELIEF

### COUNT I: Breach of Implied Warranty of Merchantability
### (Plaintiffs, Individually and on Behalf of Class)

78. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

79. Pursuant to the N.C. Gen. Stat. § 99B-1.2 and N.C. Gen. Stat. § 25-2-314, the Dishwashers owned by Plaintiffs and Class members were defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public. The Dishwashers were subject to an implied warranty of merchantability, did not comply with the warranty in that they were defective at the time of sale, and as a proximate result of the defect the Plaintiffs and class members were injured.

80. The Dishwashers left Electrolux's facilities and control with a Defect caused by defective design incorporated into the manufacture of the Dishwasher. The Defect puts the consumers at a safety risk upon using the Dishwasher in his/her home. At all times relevant hereto, there was a duty imposed by law which requires that a manufacturer or seller's product be reasonably fit for the ordinary purposes for which such products are used, and that the product be acceptable in trade for the product description. This implied warranty of merchantability is

18

part of the basis for the bargain between Electrolux, on the one hand, and Plaintiffs and class members, on the other.

81.     Notwithstanding the aforementioned duty, at the time of delivery, Electrolux breached the implied warranty of merchantability in that the Dryers were defective and posed a serious safety risk at the time of sale, would not pass without objection, are not fit for the ordinary purposes for which such goods are used, and failed to conform to the standard performance of like products used in the trade.

82.     Electrolux knew, or should have known, that the Dishwashers posed a safety risk and were defective and knew, or should have known, of these breaches of implied warranties prior to sale of the Dishwashers to Plaintiff and Class members.

83.     As a direct and proximate result of Electrolux's breaches of its implied warranties, Plaintiffs and class members bought the Dishwashers without knowledge of the Defect or their serious safety risks and purchased unsafe products which could not be used for their intended use.

84.     As a direct and proximate result of Electrolux's breach of its implied warranties, Plaintiffs and Class members have suffered damages and Electrolux was unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of repair, replacement or a recall.

**COUNT II: Breach of Implied Warranty of Fitness For a Particular Purpose**
**(Plaintiffs, Individually and on Behalf of Class)**

85.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

86.     Pursuant to the N.C. Gen. Stat. § 99B-1.2 and N.C. Gen. Stat. § 25-2-315, at the time Plaintiffs and Class members purchased the Dishwashers, they intended to use the goods for

19

the particular purpose of safely washing dishes in a residential setting for personal, family, or household purposes. At the time of purchase of the Dishwashers, Electrolux had reason to know of this particular purpose and this implied warranty of fitness for a particular purpose was part of the basis of the bargain between Electrolux, on the one hand, and Plaintiffs and class members, on the other hand. Indeed, Electrolux sold the Dishwashers for home use.

87. Plaintiffs and class members relied on Electrolux's skill and judgment to design and manufacture dishwashers suitable for this particular purpose. At the time of purchase, Electrolux had reason to know that Plaintiffs and class members relied on its skill and judgment. The Dishwashers, however, when sold to Plaintiffs and class members, and at all times thereafter, were not fit for their particular purpose of safely washing dishes. Specifically, the Dishwashers owned by Plaintiffs and class members were defectively designed and manufactured and left Electrolux's facilities and control with a Defect incorporated into the manufacture of the Dishwasher and posed a serious risk to safety immediately upon purchase.

88. Accordingly, Electrolux breached the implied warranty of fitness for a particular purpose in that the Dishwashers are defective and not fit for their intended purpose of safely washing dishes. Electrolux knew, or should have known that the Dishwashers posed a safety risk and were defective and knew, or should have known, of these breaches of implied warranties prior to sale of the Dishwashers to Plaintiffs and class members.

89. As a direct and proximate result of Electrolux's breaches of its implied warranties, Plaintiffs and class members bought the Dishwashers without knowledge of the Defect or their serious safety risks, and purchased unsafe Dishwashers which could not be used for their intended use.

90.     As a direct and proximate result of Electrolux's breach of its implied warranties, Plaintiffs and Class members have suffered damages, and Electrolux was unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of replacement products or a recall.

## COUNT III:  Breach of Express Warranty
### (Plaintiffs, Individually and on Behalf of the Class)

91.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

92.     Electrolux made repeated and express warranties about the quality and safety of its products and expressly assured customers that the Dishwashers are safe to use in their homes and at a minimum would not burn, cause flooding and fires.

93.     For example, Electrolux assures customers on its website that "[h]igh standards of quality at Electrolux Major Appliances mean we are constantly working to improve our products."  In its Use and Care Video, Electrolux instructs customers to feel comfortable using their dishwashers even when they are not at home. http://www.electroluxappliances.com/kitchen-appliances/dishwashers ("By the way, you can always feel comfortable using delay start, **even if you are away from the home,** because the Electrolux leak-detection system detects leaks immediately, stops, and drains the dishwasher.") (emphasis added).  The video assures customers that the Universal Leak Detection System "detects any water leak, immediately stops and drains the appliance, and sounds an alarm."

94.     Further, in its Use and Care Guide, Electrolux provides an express service warranty:  "Your appliance is covered by a one year warranty.  For one year from your original date of purchase, Electrolux will pay all costs for repairing or replacing any parts of this

21

appliance that prove to be defective in materials or workmanship when such appliance is installed, used and maintained in accordance with the provided instructions."

95.     Upon information and belief, each Dishwasher in the class had an identical service warranty.  These express written warranties covered qualities and features of the Dishwashers that were material and were part of the bargain between Electrolux on the one hand and Plaintiffs and Class members on the other hand.  At the time it made these express warranties, Electrolux knew of the purpose for which the Dishwashers were to be used.

96.     The Dishwashers purchased by Plaintiff and Class members did not conform to Electrolux's promises, descriptions or affirmations of fact, because they are not free from defects and pose a serious safety risk to Plaintiff and Class members.  Electrolux failed to design and manufacture the Dishwashers in such a way that they would perform as represented.

97.     Within the express warranty period, Plaintiffs and class members experienced problems with their Electrolux Dishwashers as described herein.  Electrolux was notified of each of these problems by Plaintiffs and Class members but failed to provide a defect-free dishwasher to Plaintiffs and Class members free of charge and/or failed to provide replacement parts or a product with a replacement design to remedy the Defect.

98.     For example, the Dishwasher Plaintiffs purchased failed to operate normally, damaged property, and had to be replaced because the heating element came into contact with, and melted, the bottom of the dishwasher's plastic tub and caused flooding.

99.     Contrary to Electrolux's express written warranties, Electrolux failed to provide a Dishwasher that was safe for in home use.  Contrary to its express warranties, Electrolux failed to provide a dishwasher free of defects and which could be used for its ordinary purpose of washing dishes without failure or risk of flooding or fire.  Electrolux breached its express written

22

warranties to Plaintiffs and Class members in that the Electrolux Dishwashers created a serious safety risk to Plaintiffs and consumers, failed to perform as represented by Electrolux, and Electrolux failed to replace its defective Dishwashers when they did fail.

100.    Electrolux has been put on notice of its breach of express written warranties by Plaintiffs and Class members, who made warranty claims, demanded service and repair or replacement of the Electrolux Dishwashers, and complained to Electrolux regarding the defective nature of the Electrolux Dishwashers and Electrolux's failure to repair them within the service warranty period (less than one year after they purchased their Dishwasher).  However, Electrolux failed to timely and adequately honor the warranty.   Upon information belief, Electrolux engaged in a pattern and practice of delaying and obstructive conduct with regard to warranty claims by its customers.

101.    As a result of Electrolux's breach of its express written warranties, Plaintiffs and Class members have suffered damages.

### COUNT IV: Unfair and Deceptive Trade Practices
### (Plaintiffs, Individually and on Behalf of Class)

102.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

103.    Upon information and belief, the negligent and deceptive acts taken by Electrolux in designing, testing, manufacturing, marketing and selling the Dishwashers took place and/or were directed from North Carolina.  Defendant Electrolux engages in a continuous course of business in North Carolina and is headquartered and has its principal place of business from where it designs, manufactures and sells its products in North Carolina.

104.    Defendant's business operations in North Carolina, are contrary to the public policy of North Carolina, are substantially injurious to consumers, and constitute unfair and

23

deceptive trade practices under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*. ("NC UDAP"). NC UDAP provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).

105. Electrolux developed, manufactured, marketed and sold the defective Dishwashers containing the Defect as alleged herein. Electrolux developed, manufactured, marketed and sold the Dishwashers despite knowledge of the Defect and that the Dishwashers posed a serious safety risk to consumers like Plaintiff and class members.

106. Electrolux's sale of its Dishwashers as safe for home use despite knowing that the Dishwashers posed a serious safety risk to consumers, failing to disclose the Defect and safety risks known to Electrolux but hidden from the consumer, and Defendant's knowing concealment of the defective Dishwashers' unreasonable safety risks, constitute misrepresentations, omissions and concealments of material fact that constitute unfair and/or deceptive trade practices in violation of NC UDAP. Defendant's unfair and deceptive practices alleged herein constitute unfair and deceptive acts or practices in or affecting commerce pursuant to N.C. Gen. Stat. § 75-1.1. Defendant's practices are illegal, unfair or deceptive acts or practices in the conduct of trade or commerce and are inherently deceptive. Defendant's practices alleged herein offend public policy and are immoral, unethical, oppressive, and unscrupulous.

107. Electrolux violated NC UDAP not only when it sold the Dishwashers as safe to be used in consumers' homes, but when it failed to disclose to Plaintiffs and class members that the Dishwashers had a Defect that posed a serious safety risk to consumers and the public despite the knowledge that the Dishwashers posed a serious safety risk to Plaintiff and class members.

24

108. Electrolux engaged in deceptive trade practices, in violation of NC UDAP, including selling a product for home use that was unsafe to use in the home, holding out to the public that its product that could be used safely in the home, and failing to warn consumers that the Dishwashers contained a Defect that posed a serious safety risk to consumers and the public.

109. Electrolux's deceptive trade practices were designed to induce Plaintiffs and class members to purchase the Dishwashers containing the Defect and to avoid the cost of replacing the defective Dishwashers already in use homes across the United States. Electrolux's violations of NC UDAP were designed to conceal, and Electrolux failed to disclose, material facts about the Defect and unreasonable safety risks in the Dishwashers in order to induce Plaintiffs and class members to purchase the Dishwashers and in order to avoid the enormous business cost of replacing millions of the Dishwashers.

110. By engaging in the unfair and deceptive conduct described herein and more fully above, Electrolux actively concealed and failed to disclose material facts about the defective Dishwashers.

111. The omissions set forth above regarding the Dishwashers are material facts that a reasonable person would have considered important in deciding whether or not to purchase a dishwasher. Indeed, no reasonable consumer would have knowingly bought a Dishwasher for use in the home if that consumer had known that the product has a serious Defect and safety risk and that the Defect caused the Dishwasher to start on burn, flood or start on fire in the home.

112. Electrolux's acts were intended to be deceptive and/or fraudulent, namely to market, distribute and sell the Dishwashers and to avoid the expense of replacing Dishwashers across the United States.

113.    Plaintiffs and class members suffered injury in-fact as a direct result of Electrolux's violations of NC UDAP in that they have paid for a Dishwasher that has already suffered harm due to the Defect or that poses an immediate safety risk and will have to be replaced and have not received the benefit of the bargain they made when purchasing the Dishwashers.

114.    Had Electrolux disclosed the true quality, nature and defects of the Dishwashers, Plaintiffs and class members would not have purchased the Dishwashers

115.    Plaintiffs and class members have also been denied the use of their Dishwashers, expended money on replacements, repairs, and extended warranties, and suffered unreasonable diminution in value of their Dishwashers as a result of Electrolux's conduct.

116.    To this day, Electrolux continues to violate NC UDAP by concealing the defective nature of the Dishwashers in failing to notify customers, failing to issue a recall, and in collecting the profits from costly repairs and replacements.

117.    Plaintiffs and members of the class have been damaged by these violations of NC UDAP.  The damages should be trebled and Plaintiffs and class members should be allowed to recover attorneys' fees pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1.

### COUNT V: Negligence
### (Plaintiffs, Individually and on Behalf of Class)

118.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

119.    Pursuant to the provisions of the North Carolina Product Liability Act, N.C. Gen. Stat. § 99B-1 *et seq.,* Plaintiffs herein plead Defendant's failure to warn and Defendant's liability for defective design with regard to the Defect in the Dishwashers.  Pursuant to N.C. Gen. Stat. § 99B-1, Plaintiffs are each a Claimant within the meaning of the Act.  Defendant is a

26

Manufacturer insofar as Defendant designed, assembled, fabricated, produced, constructed or otherwise prepared the Dishwasher products prior to their sales to users or consumers.

120. Electrolux owed a duty to Plaintiffs and class members to design, manufacture, produce, test, inspect, market, distribute, and sell the Dishwashers with reasonable care and in a workmanlike fashion, and had a duty to protect Plaintiffs and class members from foreseeable and unreasonable risk of harm. Electrolux breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting and distributing the Dishwashers.

121. Pursuant to N.C. Gen. Stat. § 99B-5, Defendant acted unreasonably in failing to provide appropriate and adequate warnings and instructions, and the failure to provide adequate warnings and instructions was a proximate cause of the harm for which damages are sought. In addition, at the time the product left the control of the Defendant, the product, without an adequate warning or instruction, created an unreasonably dangerous condition that the Defendant knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant. Defendant Electrolux knew or should have known that the Dishwashers they designed, manufactured, produced, tested, inspected, marketed, distributed, and sold, in ordinary and foreseeable use, created an unreasonable safety risk and would fail to perform as intended.

122. Pursuant to N.C. Gen. Stat. § 99B-6, at the time of the manufacture of the Dishwashers, the Defendant acted unreasonably in designing or formulating the product, and this conduct was a proximate cause of the harm for which damages are sought. Further, at the time the product left the control of Defendant, Defendant unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation that could then have been reasonably adopted and that would have prevented or substantially reduced the risk of

harm without substantially impairing the usefulness, practicality, or desirability of the product. Furthermore, at the time the product left the control of Defendant, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

123. Electrolux knew or should have known that the Dishwashers created an unreasonable safety risk as the Dishwashers had a Defect causing them to burn, cause flooding and start on fire. Electrolux further knew or should have known that the Dishwashers had a Defect which could cause catastrophic property damage, personal injury, and death.

124. Based on this knowledge, Electrolux had a duty to disclose to the Plaintiffs and class members the serious safety risks posed by the Dishwashers and a duty to disclose the defective nature of the Dishwashers.

125. Electrolux had a further duty not to put the defective Dishwashers on the market and has a continuing duty to replace its unsafe Dishwashers, remove its unsafe Dishwashers from the market and seek a recall from consumers.

126. Electrolux failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Dishwashers by, among other things, failing to design and manufacture the Dishwashers in a manner to ensure that, under normal intended usage, a serious safety risk such as the one posed by the Dishwashers did not occur.

127. Electrolux failed to exercise reasonable in failing to warn or to warn adequately and sufficiently, either directly or indirectly, users of the uniform Defect in the Dishwashers.

128. Electrolux failed to exercise reasonable care when it knew of the safety risks the Dishwashers posed and actively concealed those risks from Plaintiffs and class members, and

failed to replace, repair or recall Dishwashers it knew or should have known were unsafe and defective.

129.     Electrolux was unjustly enriched by keeping the profits from the sales of the unsafe Dishwashers while never having to incur the cost of repair, replacement, or a recall. Electrolux's negligence was a substantial factor in causing harm to Plaintiffs and class members and unjust enrichment to Electrolux.

130.     As a direct and proximate result of Electrolux's negligence, Plaintiffs and class members bought the Dishwashers without knowledge of the Defect or of their serious safety risks, purchased unsafe products which could not be used for their intended use, and Plaintiffs and Class members have suffered damages.

## COUNT VI: Injunctive and Declaratory Relief
### (Plaintiffs Individually and on Behalf of Class)

131.     Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

132.     There is an actual controversy between Electrolux and class members concerning the existence of defects in the Dishwashers.

133.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

134.     Accordingly, Plaintiffs and class members seek a declaration that the Dishwashers have a common Defect in their design and/or manufacture.

135.     Additionally, Plaintiffs and class members seek a declaration that this common Defect found in the Dishwashers poses a serious safety risk to consumers and the public.

136.     Electrolux designed, manufactured, produced, tested, inspected, marketed, distributed, and sold dishwashers which contain material and dangerous defects as described herein.  Based upon information and belief, Electrolux continues to design, manufacture, produce, test, inspect, market, distribute, and sell dishwashers which contain material and potentially dangerous defects as described herein.

137.     Based upon information and belief, Electrolux has taken no corrective action concerning the defects described herein, and has not issued any warnings or notices concerning the dangerous defect, nor implemented a product recall.

138.     Plaintiffs and the Class have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Electrolux Dishwasher defects.  Electrolux should be required to take corrective action to prevent further injuries, including:  (a) Issuing a nation-wide recall of the Dishwashers; (b) Issuing warnings and/or notices to consumers and the Class concerning the Dishwasher Defect; and (c) Immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective dishwashers described herein.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs pray for the following judgment:

A.     An Order certifying this action as a class action;

B.     An Order appointing Plaintiffs as class representatives and appointing counsel undersigned to represent the Class;

C.     A Declaration that the Dishwashers are defective;

D.     An Order awarding injunctive relief by requiring Electrolux to issue corrective actions including notification, recall, inspection and, as necessary, repair and replacement of the Dishwashers;

E.     Payment to the Class of all damages associated with the defective products, in an amount to be proven at trial;

30

F.     An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

G.     Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

H.     Such other and further relief as this Court may deem just, equitable, or proper.

**PLAINTIFFS RESPECTFULLY REQUEST A TRIAL BY JURY.**

Respectfully submitted,

s/John Hughes
Mona Lisa Wallace, Esq.
NCSB 9021
John Hughes, Esq.
NCSB 22126
Wallace & Graham, P.A.
525 N. Main Street
Salisbury, NC  28144
Phone: 800-849-5291
Fax: 704-633-9434
Email:  mwallace@wallacegraham.com
Email:  jhughes@wallacegraham.com

Gregory F. Coleman
Mark Silvey
GREG COLEMAN LAW PC
Bank of America Center
550 Main Avenue, Ste 600
Knoxville, Tennessee 37902
Phone: 865-247-0080
Fax: 865-522-0049
Email:  greg@gregcolemanlaw.com
Email:  mark@gregcolemanlaw.com
*Pro Hac Vice to be Filed*

Charles J. Crueger
Erin K. Dickinson
HANSEN RIEDERER DICKINSON CRUEGER & REYNOLDS LLC
316 N. Milwaukee St., Ste. 200
Milwaukee, Wisconsin 53202
Phone: 414-455-7676
Fax: 414-273-8476
*Pro Hac Vice to be Filed*

Edward A. Wallace
Amy E. Keller
Dawn M. Goulet
WEXLER WALLACE LLP
55 W. Monroe St., Ste. 3300
Chicago, Illinois 60603
Phone: 312-346-2222
Fax: 312-346-0022
*Pro Hac Vice to be Filed*
*Attorneys for Plaintiffs and the Putative Class*

32